

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00032-CV

IN RE CARLTON SEWELL

Original Mandamus Proceeding

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

Carlton Sewell, Relator, has filed a petition for a writ of mandamus seeking relief from an order denying his motion to withdraw deemed admissions. After considering Relator's petition and the response by the real parties in interest (RPI),[1] we hold that the trial court erred in denying Relator's motion to withdraw his deemed admissions. We conditionally grant the writ of mandamus and order the trial court to vacate its orders denying withdrawal of Relator's deemed admissions and to grant his motion to withdraw the deemed admissions.

## I.      Background Facts

On January 15, 2008, Relator obtained an order from the County Court of Hopkins County probating as a muniment of title Velma Ruth Fitzgerald's will dated August 8, 2007 (the Will). On January 30, 2008, the RPI filed an opposition to the probate of the Will alleging that Fitzgerald lacked testamentary capacity and that the Will was the result of undue influence exerted by Relator. The RPI alleged that Relator systematically gained psychological control over Fitzgerald by sequestering her and preventing contact between her and other family members. The RPI further alleged that Relator utilized the authority Fitzgerald granted to him through a power of attorney to convert certain of her assets to his benefit. The contested probate proceeding was then transferred to the County Court at Law of Hopkins County. The issue before the Court in this original

---

[1]The real parties in interest named in the opposition to the probate of the Will are Sue Neal, Melanie Wells, Robert Wells, Harold Wells, Tracy Wright, Cynthia Terrell, Nick Wells, Alleen Neal, Nicholas Maryol, Anita Counts, and Troy Sewell.

proceeding arises from Relator's failure to timely answer requests for admissions during a period in which he was not represented by counsel.

On May 13, 2008, the RPI deposed Relator. On January 23, 2009, Relator's original attorney was allowed to withdraw from his representation of Relator. On May 13, 2010, which was during the period in which Relator was unrepresented by counsel, he was served with requests for admissions[2] by the RPI. Relator admitted that the signature on the certified mail return receipt was his, but he did not remember the document. Relator did not answer the requests for admissions by the deadline, and under Rule 198.2 of the Texas Rules of Civil Procedure, they were deemed admitted. *See* TEX. R. CIV. P. 198.2(c). Relator remained unrepresented by counsel until August 4, 2010, when Frank Bauer filed his notice of appearance on Relator's behalf. When Bauer entered his appearance, less than three months after the requests were served, he requested that all notices given and papers that had been served in the proceeding be served on him. The RPI did not serve the requests for admissions on Bauer.

The parties agree that after the requests for admissions were served, they conducted additional discovery, including requests for disclosures, interrogatories, requests for production, and additional depositions. On April 22, 2013, Bauer was allowed to withdraw as counsel for Relator. On July 19, 2013, Relator retained the services of his current counsel, J. Brad McCampbell, to represent him in the suit.

---

[2]Most of the deemed admissions are merit-preclusive.

3

The case was set for a jury trial on the afternoon of January 12, 2015. That morning, the RPI filed a certificate of deemed admissions, attaching the requests for admissions previously served on Relator. Neither Bauer nor McCampbell had any knowledge of the requests for admissions before the certificate was filed on the morning the case was set for trial. The trial court continued the case, and on February 10, 2015, Relator filed a motion to withdraw the deemed admissions, along with responses denying each of the requests for admissions.

On April 7, 2015, the trial court held a hearing on Relator's motion to withdraw the deemed admissions. Shortly before the hearing, the RPI filed a motion for summary judgment based on the deemed admissions. By order dated April 14, 2015, the trial court denied Relator's motion to withdraw the deemed admissions and set the RPI's motion for summary judgment for a hearing. After Relator filed his petition for a writ of mandamus in this Court, the RPI filed a notice withdrawing eight of the deemed admissions that they acknowledged were merit-preclusive. Of the eight remaining non-withdrawn deemed admissions, the RPI admit that two are merit-preclusive. In the same filing, the RPI repudiated their motion for summary judgment.

On July 7, 2015, the trial court entered an order accepting the RPI's withdrawal of eight deemed admissions, reaffirming its order denying Relator's motion to withdraw the eight remaining deemed admissions, and finding that Relator did not have good cause to withdraw the admissions because he had acted with conscious indifference. The trial court accepted the RPI's withdrawal of their motion for summary judgment.

4

**II. General Standard of Review Applicable to Petitions Seeking a Writ of Mandamus**

Mandamus issues only when the record shows (1) a clear abuse of discretion by the trial court or the failure of the trial court to perform a ministerial act or duty and (2) the absence of an adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding); *In re Ingram*, 433 S.W.3d 769, 771 (Tex. App.—Texarkana 2014, orig. proceeding); *In re Rozelle*, 229 S.W.3d 757, 760 (Tex. App.—San Antonio 2007, orig. proceeding). The trial court errs in this context when "'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Walker*, 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)); *Ingram*, 433 S.W.3d at 771; *see also Rozelle*, 229 S.W.3d at 760. Under this standard, when determining applicable law or applying the law to the facts, the trial court has no discretion. *Walker*, 827 S.W.2d at 840; *Ingram*, 433 S.W.3d at 771. When the trial court clearly fails to correctly analyze or apply the law in this context, mandamus may issue. *Walker*, 827 S.W.2d at 840; *Ingram*, 433 S.W.3d at 771; *Rozelle*, 229 S.W.3d at 761. Thus, mandamus will issue when a trial court fails to apply the proper legal standard. *See CNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1986).

Generally, a trial court's orders relating to discovery can be corrected on appeal, and consequently, mandamus is typically not available with respect to discovery issues. *Rozelle*, 229 S.W.3d at 761. For this reason, a party seeking mandamus review of a trial court's discovery order must also show that an ordinary appeal is an inadequate remedy. *Walker*, 827 S.W.2d at 841–42; *Rozelle*, 229 S.W.3d at 761. If the trial court imposes discovery sanctions that effectively preclude a party from presenting his claims or defenses, such as striking pleadings, dismissing the action,

5

or entering a default judgment, then an ordinary appeal is an inadequate remedy unless a final, appealable judgment is entered simultaneously. *Walker* 827 S.W.2d at 843; *Trans-American Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 919 (Tex. 1991).

## III.     Burdens of Proof Applicable to Motions to Withdraw Deemed Admissions

### A.        Rule 198 of the Texas Rules of Civil Procedure

Under Rule 198 of the Texas Rules of Civil Procedure, if a party does not timely respond to a request for admissions, "the request is considered admitted without the necessity of a court order." TEX. R. CIV. P. 198.2(c). Further, any matter deemed admitted "is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." TEX. R. CIV. P. 198.3. To obtain permission to withdraw deemed admissions, a party must show (1) good cause, (2) that the other party will not be unduly prejudiced, and (3) that the presentation of the merits of the lawsuit will be served by the withdrawal. *See id.*; *Wheeler v. Green*, 157 S.W.3d 439, 443 n.2 (Tex. 2005) (per curiam). Generally, a party demonstrates "good cause" by showing that his failure to respond "was accidental or the result of a mistake, rather than intentional or the result of conscious indifference." *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam). "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler*, 157 S.W.3d at 443 (citing *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002)); *Stelly*, 927 S.W.2d at 622; *see also Wal–Mart Stores, Inc. v. Deggs*, 968 S.W.2d 354, 357 (Tex. 1998) (per curiam) (finding no undue prejudice from withdrawal of deemed admissions where plaintiff had already deposed withdrawing party). Finally, "[t]he burden of

6

proof on all *three requirements* [of Rule 198.3] is on the party seeking withdrawal." *Morgan v. Timmers Chevrolet, Inc*., 1 S.W.3d 803, 807 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

### B.        Merit-Preclusive Requests for Admissions

A different standard applies when the deemed admissions are merit-preclusive. When admissions are used in an attempt to "preclude the presentation of the merits of a case," due process is implicated since the deemed admissions compromise a party's right to present the merits of his case. *See Wheeler*, 157 S.W.3d at 443; *Rozelle*, 229 S.W.3d at 763.  By denying a motion to withdraw merit-preclusive admissions, the trial court effectively enters a case-ending discovery sanction. *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (per curiam) ("[W]hen admissions are deemed as a discovery sanction to preclude a presentation of the merits, they implicate the same due process concerns as other case-ending discovery sanctions.").  The Texas Supreme Court has held that

> [t]he imposition of very severe sanctions is limited . . . by constitutional due process. . . . When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery.  "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. . . . Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.

*Powell*, 811 S.W.2d at 918 (citations omitted) (quoting *Wheeler*, 157 S.W.3d at 443); *see also Marino*, 355 S.W.3d at 633; *Rozelle*, 229 S.W.3d at 763–64.  Moreover, "[a] party seeking

7

sanctions has the burden of establishing his right to relief." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993).

Accordingly, where a party moves to withdraw deemed admissions that are merit-preclusive, due-process requires the party opposing withdrawal to prove that the moving party's failure to answer the admissions resulted from "'flagrant bad faith or callous disregard of the rules.'" *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 666 (Tex. App.—San Antonio 2014, pet. denied) (quoting *Wheeler*, 157 S.W.3d at 443). Thus, although a party moving to withdraw admissions ordinarily must prove the requirements of Rule 198.3, when the deemed admissions are merit-preclusive, good cause exists absent bad faith or callous disregard of the rules by the party seeking the withdrawal. *Marino*, 355 S.W.3d at 634; *Gonzalez*, 441 S.W.3d at 666. Moreover, in such instances, it is presumed that presentation of the merits would be served by allowing withdrawal of the deemed admissions. *See, e.g.*, *Marino*, 355 S.W.3d at 634.[3]

Nevertheless, this burden of proof applies only to motions to withdraw merit-preclusive requests for admissions. If a motion to withdraw deemed admissions concerns non-merit-preclusive admissions, then the moving party must prove all of the requirements of Rule 198.3, and the trial court has broad discretion to grant or deny withdrawal. *Stelly*, 927 S.W.2d at 622. And, because non-merit-preclusive requests do not involve due process considerations, a trial

---

[3]The Supreme Court has not decided whether a party moving to withdraw merit-preclusive admissions must prove that withdrawal would not unduly prejudice the non-moving party, or whether the non-moving party must show that withdrawal would be unduly prejudicial. Nevertheless, for the reasons stated below, we find that the RPI will not be unduly prejudiced regardless of which party bears that burden of proof. Therefore, we do not decide that issue here.

court's order relating to discovery, which is "merely incidental to the normal trial process," may be corrected on appeal, and mandamus is not available. *Rozelle*, 229 S.W.3d at 761.

**IV.     Application of the Standard of Review to the Present Case**

      **A.     Some of the Deemed Admissions are Merit-Preclusive**

RPI served sixteen requests for admissions on Relator.  After Relator filed this action, the RPI filed their Notice of Withdrawal and Repudiation of Certain Deemed Admissions, wherein they withdrew request numbers 1, 3, 5, 8, 9, 14, 15, and 16.  The trial court granted the RPI's withdrawal.  Thus, only the following eight requests for admissions are at issue in this case:

> 2.     ADMIT OR DENY
> That throughout the spring and summer of 2007, Velma Ruth Fitzgerald was physically and mentally weak enough to be susceptible to undue influence.
>
> . . . .
>
> 4.     ADMIT OR DENY
> That you engaged in a campaign to keep other relatives of Velma Ruth Fitzgerald from having contact with her as part of your scheme to exert undue influence over her.
>
> . . . .
>
> 6.     ADMIT OR DENY
> That you suggested to your brother Truitt Sewell, that the two of you get Velma Ruth Fitzgerald to change her will to benefit the two of you.
>
> 7.     ADMIT OR DENY
> That you told the White brothers in Vernon that Velma Ruth Fitzgerald was not competent when she signed their lease contract.
>
> . . . .

9

10. **ADMIT OR DENY**
    That you misrepresented the nature of Velma Ruth Fitzgerald's mental independence to Ray Johnson and his staff.

11. **ADMIT OR DENY**
    That you had no contact with Velma Ruth Fitzgerald for years prior to accompanying Truitt and Laura Sewell to Dallas to visit her in a nursing home.

12. **ADMIT OR DENY**
    That you prevented Velma Ruth Fitzgerald from having telephone contact with her lifelong friend, Eurice Lee White.

13. **ADMIT OR DENY**
    That you habitually subjected Velma Ruth Fitzgerald to your control during the last year of her life.

In their Reply to Relator's Petition for Writ of Mandamus, the RPI admit that Requests 2 and 4 are merit-preclusive. Accordingly, the Motion to Withdraw Deemed Admissions involved merit-preclusive admissions.

**B.      There is no Evidence of Flagrant Bad Faith or Callous Disregard of the Discovery Rules by Relator**

The record shows that Relator was served with the requests for admissions while he was unrepresented. Although he admits that his signature appears on the certified mail return receipt, he does not remember the admissions requests. Neither of the two attorneys that subsequently represented Relator had any knowledge of the requests for admissions. Further, the parties agree that after the requests for admissions were served, they conducted additional discovery, including serving and/or responding to requests for disclosures, interrogatories, requests for production, and additional depositions. Relator's current attorney learned of the requests for admissions on the morning of trial and, after learning of them, filed a motion to withdraw the admissions, along with

belated responses. The RPI point to Relator's service of discovery on them while still unrepresented and after having been served with the requests for admissions as evidence that Relator "had some degree of legal sophistication." However, neither of Relator's discovery requests was signed, and on neither was service properly certified. None of this is evidence of flagrant bad faith or callous disregard for the Rules.

### C. Withdrawal of the Deemed Admissions Would Not Unduly Prejudice the RPI

The record does not show that the RPI were unable to prepare for trial without the admissions. The RPI deposed Relator before serving their requests for admissions. Relator asserts that his deposition testimony contradicts the substance of the requests for admissions, and the RPI do not dispute this assertion in their brief. Therefore, the RPI were aware that the matters in their requests for admissions were contested. *See Deggs*, 968 S.W.2d at 357 (party relying on deemed admissions not unduly prejudiced by withdrawal of admissions when she had deposed withdrawing party). Although the RPI point to their decision not to depose certain third parties in reliance on the deemed admissions as evidence of undue prejudice, the RPI clearly chose to do so at their own risk since they knew the matters were contested.

The primary purpose of requests for admissions is "'to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove.'" *Stelly*, 927 S.W.2d at 622 (quoting *Sanders v. Hander*, 227 S.W.2d 206, 208 (Tex. 1950)). When "used to establish controverted issues that constitute the fundamental legal issues in a case," requests for admissions are improper. *Gonzalez*, 441 S.W.3d at 668. Since the RPI knew that many, if not all, of the deemed admissions were improper, they cannot now point to their reliance

11

on them as evidence that they were unable to prepare for trial. *See Marino*, 355 S.W.3d at 632–33; *Gonzalez*, 441 S.W.3d at 668–69.

Further, any prejudice to the RPI was largely of their own making. The record shows that when Bauer entered his appearance as counsel for Relator less than three months after the requests for admissions had been served, he requested that all notices that had been given and all papers that had been served in the lawsuit be served on him. Bauer's request was made over four years before the scheduled trial of this case. Had the RPI simply notified Bauer that they had served the requests for admissions on his client, the motion to withdraw the deemed admissions could have been filed and heard years before trial, allowing the RPI more than enough time to conduct any additional discovery they thought necessary.[4] We find that the RPI would not be unduly prejudiced by allowing Relator to withdraw the deemed admissions.

The present case is similar to *Rozelle*, where the court of appeals issued a writ of mandamus to the trial court directing the withdrawal of deemed admissions because the admissions in question were merit-preclusive. *Rozelle*, 229 S.W.3d at 764. The court of appeals quoted counsel's argument to the trial court in support of its ruling:

> These admissions served on Mr. Rozelle contained a lot of conclusions, questions that were in dispute and basically asked him to admit or deny he was

---

[4]The RPI cite *Morgan v Timmers Chevrolet, Inc.*, 1 S.W.3d 803, 805–06 (Tex. App.—Houston [1st Dist.] 1999, pet. denied), and *Boulet v. State*, 189 S.W.3d 833, 838 (Tex. App.—Houston [1st Dist.] 2006, no pet.), in support of their argument that they would be unduly prejudiced. In *Morgan*, the proponent of the deemed admissions pointed out the admitting party's failure to answer the requests for admissionss two years before trial, unlike here, where the RPI never notified Relator or his attorneys until the day of trial. *See Morgan*, 1 S.W.3d at 805–06. The court of appeals found that the admitting party's failure to answer the requests for two years after the deficiency had been brought to his attention allowed the proponent of the admissions to rely on the deemed admissions in preparing its case. *Id.* In *Boulet*, the court of appeals held that the trial court abused its discretion in not allowing Boulet to withdraw merits-preclusive admissions when no flagrant bad faith or callous disregard for the Rules was shown. *Boulet*, 189 S.W.3d at 838.

12

not [a] beneficiary, admit or deny [the] trust, requested—in other words, they went to the heart of the matter. They were not admissions for the genuineness of the document or [to] admit undisputed facts as contemplated by the Legislature.

. . . .

. . . and the request[s] for admissions, themselves, are not proper questions, Your Honor. Those are intended specifically for something like that, for a trap to be set, for a trap to be laid, and I don't believe it's proper. They already knew what the answers were going to be. They already deposed him.

. . . .

I again assert that it is not the purpose of requests for admissions, to try the case on [the] merits when they already had those answers. They already deposed him, knew what his responses would be. They knew he was claiming an interest of the trust. That's the whole point or basis of quite a few suits.

*Id.* at 763. As in *Rozelle*, the admissions in this case went to the heart of the matter and occurred after Relator's deposition wherein he placed those matters in issue. Therefore, Relator was entitled to withdraw the merit-preclusive deemed admissions.

## V. Mandamus Should Issue as to All Remaining Admissions and Not Just Those the RPI Admit are Merit-Preclusive

As noted, the RPI admit that Requests 2 and 4 are merit-preclusive. Nevertheless, the RPI assert that by virtue of their Notice of Withdrawal and Repudiation of Certain Deemed Admissions, they are free to use the remaining admissions at trial. In other words, the RPI contend that they have excised the merit-preclusive admissions and that the remaining admissions are non-merit-preclusive. As a result, their reasoning continues, under Rule 198.3's standard of review applicable to non-merit-preclusive admissions, Relator's conscious indifference negates good cause to withdraw those admissions. The trial court agreed with the RPI as evidenced by its July 7,

13

2015, Order Granting Contestants' Notice of Withdrawal and Repudiation of Certain Deemed Admissions. In doing so, the trial court applied an incorrect legal standard.

The Texas Supreme Court has stated that the primary purpose of requests for admissions is "'to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove.'" *Stelly*, 927 S.W.2d at 622 (quoting *Sanders*, 227 S.W.2d at 208). "When requests for admissions are used as intended—addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents—deeming admissions by default is unlikely to compromise presentation of the merits." *Wheeler*, 157 S.W.3d at 443 (citing *Stelly*, 927 S.W.2d at 622). Thus, they were never intended to be a trap in which a party admits he has no cause of action or defense. *Marino*, 355 S.W.3d at 632 (citing *Stelly*, 927 S.W.2d at 622).

Clearly, using admissions to prove authenticity or admissibility of documents does not require a party to admit he has no cause of action or defense. *See id*. Likewise, an admission on an uncontroverted matter does not prevent a party from litigating the merits of his claim or defense. But whether an admission is one which precludes litigation of a claim or defense or merely seeks admission of an uncontroverted matter may not always be apparent until the admission is evaluated in the context of the other evidence. For example, in the present case, the RPI challenged the Will, alleging that Relator exercised undue influence over the testatrix. In *In re Estate of Reno*, 443 S.W.3d 143 (Tex. App.—Texarkana 2009, no pet.), we stated the elements of a claim of undue influence as follows:

> To justify setting aside a will because of undue influence, a contestant must prove (1) the existence and exertion of an influence (2) that subverted or overpowered the mind of the testator at the time of execution of the instrument (3) so that the testator

14

executed an instrument he or she would not otherwise have executed but for such influence.

*Id.* at 150. Moreover, we also held that

the general topics examined to prove an influence was undue are: the relationship existing between the testator and the parties, the opportunities for an exertion or deception, the circumstances surrounding the drafting and execution of the will, the existence of a fraudulent motive, and any domination of the testator by another.

*Id.* at 151. Additionally, we held,

Even though none of the circumstances standing alone would be sufficient to satisfy the elements of undue influence, if when considered together the circumstances produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of the testator and resulted in the execution of the testament in controversy, the evidence is sufficient to sustain such conclusion.

*Id.*

Clearly, an admission that one exercised undue influence over the testatrix would be merit-preclusive because undue influence is the ultimate issue in the case. But an admission that "you habitually subjected Velma Ruth Fitzgerald to your control during the last year of her life" could also be merit-preclusive depending upon the nature and quantity of the other evidence presented. If Relator is prohibited from introducing evidence to controvert that he "habitually subjected Velma Ruth Fitzgerald to [his] control during the last year of her life" and that fact is all that remains to establish undue influence, then the request could be merit-preclusive because it conclusively establishes the missing proof.

Moreover, the cumulative effect of admitting (1) that "you suggested to your brother Truitt Sewell, that the two of you get Velma Ruth Fitzgerald to change her will to benefit the two of you," (2) that "you told the White brothers in Vernon that Velma Ruth Fitzgerald was not

15

competent when she signed their lease contract," (3) that "you misrepresented the nature of Velma Ruth Fitzgerald's mental independence to Ray Johnson and his staff," (4) that "you had no contact with Velma Ruth Fitzgerald for years prior to accompanying Truitt and Laura Sewell to Dallas to visit her in a nursing home," (5) that "you prevented Velma Ruth Fitzgerald from having telephone contact with her lifelong friend, Eurice Lee White," and (6) that "you habitually subjected Velma Ruth Fitzgerald to your control during the last year of her life" could be merit-preclusive depending upon the nature and quantity of other evidence presented to the fact-finder. If the remaining evidence is scant, then by deeming those facts admitted and prohibiting Relator from litigating the truth of those facts at trial, Relator will be precluded from contesting the merits of the claims of the RPI. Accordingly, it is not possible to determine that the remaining requests for admissions are not merit-preclusive without seeing the remainder of the evidence.[5]

Because merit-preclusive admissions operate as a sanction that implicates due process concerns, whereas non-merit-preclusive admissions do not, then it is not enough to show that the admissions do not conclusively establish the ultimate issue in the case to escape withdrawal. Rather, the record must affirmatively show that the requests are not merit-preclusive, either by showing that they seek to authenticate or prove the admissibility of documents or by showing that they involve uncontroverted facts.[6] Moreover, because merit-preclusive admissions implicate due

_____

[5]The RPI also alleged that the testatrix lacked testamentary capacity and that Relator converted estate assets through his use of the authority granted him by the testatrix through a power of attorney. For the same reasons discussed above, it is not possible to determine on this record that the remaining admissions are not merit-preclusive as to those causes of action as well.

[6]For example, if a plaintiff in a personal injury suit testified in his deposition that one of his injuries was not caused or aggravated by the defendant's actions at issue and the defendant followed up the deposition with a request for

16

process concerns, when the record does not affirmatively establish that the admissions are non-merit-preclusive, we must presume that they are merit preclusive. The mandamus record before us does not affirmatively show that the requests for admissions are non-merit preclusive; consequently, if the RPI cannot establish that the deemed admissions resulted from Relator's flagrant bad faith or callous disregard of the discovery rules and if the trial court's denial of Relator's motion to withdraw the deemed admissions was not accompanied by a simultaneously entered, final, appealable judgment, then mandamus will issue as to all of the requests for admissions.

In the present case, the RPI concede that Requests 2 and 4 are merit-preclusive, and the record does not show that the remaining requests are non-merit preclusive. As a result, we must presume that they are. Therefore, Relator's Motion to Withdraw Deemed Admissions must be granted as to all of the requests for admissions—request numbers 2, 4, 6, 7, 10, 11, 12, and 13.

## VI. Conclusion

Based on the foregoing, we conclude that the trial court erred in denying Relator's Motion to Withdraw Deemed Admissions because it applied an incorrect legal standard. By ruling that Relator had not established good cause for withdrawal because his failure to answer the requests resulted from conscious indifference, the trial court applied the legal standard applicable to non-merit-preclusive admissions. Because the RPI admit that two of the admissions in question are merit-preclusive and because the record does not affirmatively show that the remaining requests

---

admission that the defendant did not cause or aggravate the particular injury, the deposition testimony would be some evidence affirmatively showing that the request for admission concerned an uncontroverted issue.

are non-merit preclusive, then the trial court should have applied the standard applicable to merit-preclusive admissions. Under that standard, withdrawal is required because the RPI failed to prove that Relator's admissions resulted from flagrant bad faith or callous disregard of the discovery rules, and withdrawal will not unduly prejudice the RPI. Finally, because the trial court's order denying withdrawal was not accompanied by a simultaneously entered, final, appealable judgment, Relator has no adequate remedy at law by appeal.

Accordingly, we conditionally grant the writ of mandamus. Because we are confident that the trial court will act promptly to (1) vacate its orders of April 14, 2015, and July 7, 2015, insofar as they deny Relator's Motion to Withdraw Deemed Admissions, and (2) enter an order allowing Relator to withdraw all of his deemed admissions, the writ will not issue unless the trial court fails to do so within ten days of the date of this opinion.

Ralph K. Burgess
Justice

Date Submitted:     August 24, 2015
Date Decided:       August 25, 2015

18