

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00021-CV

———————————————————

SOUTH TEXAS INNOVATIONS, LLC D/B/A STI, LLC, Appellant

V.

RISE RESIDENTIAL CONSTRUCTION, LP, GCRE/TX MAIN MF, LLC, AND
LCAR PARK VIEW, LLC, Appellees

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. 17-5219-211

Before Sudderth, C.J.; Meier and Kerr, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

After South Texas Innovations, LLC d/b/a STI, LLC failed to respond to merits-preclusive requests for admissions, they were deemed admitted, and Rise Residential Construction, LP, GCRE/TX Main MF, LLC, and LCAR Park View, LLC moved for summary judgment based on those admissions. STI moved to withdraw the admissions, but the trial court denied the motion and granted summary judgment for Rise, GCRE, and LCAR. STI has appealed, complaining in two issues that the trial court erred by denying STI's motion to withdraw the deemed admissions and by granting summary judgment against STI based on those admissions. We will reverse and remand.

## I.
## Background

The underlying dispute involves a multifamily-housing construction project in Little Elm, Texas, owned by GCRE and LCAR. Rise was the general contractor on the project, and STI was Rise's concrete subcontractor.

In September 2016, Rise sued GCRE for its alleged failure to pay Rise for work done on the project. GCRE countersued. In November 2016, STI intervened, alleging claims against GCRE, LCAR, and Rise for Rise's alleged failure to pay for labor, materials, and equipment STI provided under the subcontract and seeking to foreclose on the mechanic's and materialmen's liens STI had filed against the

2

property. When STI intervened, it was represented by Brian Tagtmeier, an attorney in Houston, Texas, who had represented STI in various matters since mid-2014.

About a week after STI intervened, the trial court (on Rise's motion) ordered Rise, GCRE, and LCAR (but not STI) to mediation and arbitration and stayed the lawsuit pending the outcome of those proceedings. Even though it was not subject to the trial court's order, STI mediated with Rise, GCRE, and LCAR. But the mediation was unsuccessful, and Rise, GCRE, and LCAR submitted their claims to arbitration. STI agreed to submit its claims to arbitration, but it never entered an appearance in that proceeding.

In May 2017, Rise, GCRE, and LCAR moved to dismiss STI's claims as sanctions for its failure to submit its claims to arbitration after agreeing to do so. They alternatively moved the trial court to sever STI's claims. In July 2017, the trial court lifted the stay as to STI's claims and severed them into a separate cause of action.

Around this time (late spring and early summer 2017), Tagtmeier stopped communicating with STI and opposing counsel. In late June and throughout July, Damian Abreo, another Houston attorney, communicated with Rise's and GCRE and LCAR's counsel about the case and told them that he and his firm—Johnson Deluca Kurisky & Gould, P.C.—would be replacing Tagtmeier as STI's counsel. But Abreo stopped communicating with counsel for Rise, GCRE, and LCAR, and he and his firm did not file an appearance in the lawsuit at that time.

On August 1, 2017, Rise served requests for admissions on STI through Tagtmeier. Ten days later, GCRE and LCAR served nearly identical requests on STI through Tagtmeier. Because STI did not timely respond to either set of requests, they were deemed admitted. *See* Tex. R. Civ. P. 198.2(a), (c). In early October 2017, Rise, GCRE, and LCAR moved for summary judgment on STI's claims based solely on the deemed admissions. Both motions were set for hearing on November 21, 2017.

On November 9, 2017, Abreo and Adam Diamond, another attorney with Johnson DeLuca Kurisky & Gould, filed a notice of appearance as counsel for STI. The following day, STI moved to continue the summary-judgment hearing. On November 14, 2017, STI answered both sets of admissions, responded to the summary-judgment motions, and moved to withdraw the deemed admissions. A week later, the trial court continued the summary-judgment hearing to December 5 and gave STI an opportunity to amend its pleadings. STI amended its summary-judgment response and its motion to withdraw the deemed admissions, which was supported by a sworn declaration from Tagtmeier and affidavits from Abreo and Gary Haymond, STI's manager.

According to Tagtmeier's declaration, he had suffered from depression for many years but had been able to manage his illness through medication, therapy, and lifestyle changes. But after his father's death in July 2016, his depression worsened, and he developed other health problems, which contributed to his depression. Over time, his depression continued to worsen, and in July 2017, he began having suicidal

4

thoughts. In late August 2017, Hurricane Harvey hit Houston, causing catastrophic damage. The storm "severely impacted" Tagtmeier's depression and caused many family emergencies but, as Tagtmeier admitted, did not cause any work-related emergencies. By early October 2017, he had formulated several suicide plans and, on two occasions, "went to places to jump and couldn't." Tagtmeier was eventually hospitalized for several days in October and November 2017.

Even though Tagtmeier was suffering from debilitating depression, he served as an arbitrator in two arbitration proceedings in August and September 2017. But Tagtmeier did not recall receiving either set of requests for admissions. Had he known about the requests, he would have forwarded them to STI to answer.

Abreo stated in his affidavit that although he had communicated with opposing counsel before filing an appearance for STI, he did not know about the requests for admissions until November 8, the day before he filed his appearance. Haymond averred that he was not aware of the requests until Abreo told him about them on November 9 and that had he or STI known of them earlier, STI would have responded to them. Haymond further stated that once STI learned about the requests for admissions, STI cooperated with its attorneys to answer them.

In response to STI's motion, Rise, GCRE, and LCAR argued that STI had failed to show good cause for not responding to the admission requests. They complained that STI had known about Tagtmeier's condition since May and that Abreo and his firm should have appeared for STI in the lawsuit in June or July instead

5

of waiting until November. Rise's CEO, Dewey Stevens (whose affidavit was attached to Rise's response), informed Haymond several times in the summer of 2017 that Tagtmeier had stopped communicating with Rise's attorneys and that these communication issues were affecting resolution of the lawsuit. When Abreo stopped communicating with Rise's attorneys after having first contacted them in July about entering an appearance for STI, Stevens contacted Haymond again about the communication issues, but he did not respond.

Rise, GCRE, and LCAR further argued that in August and September 2017—the period during which the requests for admissions were served and STI's responses were due—Tagtmeier continued to practice law and served as an arbitrator, even though his depression was worsening. GCRE and LCAR pointed out that Tagtmeier did not state in his declaration that either his mental illness or Hurricane Harvey prevented him from working during this time. They also complained that according to Tagtmeier's Facebook page, he was socializing with friends and was posting about current events and sports during August, September, October, and November 2017.

The trial court denied STI's amended motion to withdraw the deemed admissions and granted summary judgment in favor of Rise, GCRE, and LCAR, ordering that STI take nothing on its claims against them and declaring STI's liens invalid. STI has appealed.

## II.
## Governing Law and Standard of Review

A party may serve another party with written requests that the other party admit the truth of any matter within the scope of discovery, including statements of opinion, statements of fact, and statements applying the law to the facts. Tex. R. Civ. P. 198.1. If the responding party does not timely serve its responses, "the request is considered admitted without the necessity of a court order." Tex. R. Civ. P. 198.2(c). An admitted matter "is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." Tex. R. Civ. P. 198.3.

A trial court may allow withdrawal of an admission if (1) the admitting party shows good cause and (2) the trial court finds that the party relying on the deemed admissions will not be unduly prejudiced and that permitting the withdrawal will further the presentation of the case's merits. *Id.* A party establishes "good cause" by showing that the failure to timely respond was an accident or mistake, not intentional or the result of conscious indifference. *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005). "Undue prejudice depends on whether withdrawing an admission . . . will delay trial or significantly hamper the opposing party's ability to prepare for it." *Id.* at 443.

A trial court has broad discretion to permit or deny the withdrawal of deemed admissions, but it cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. *Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011); *Wheeler*,

157 S.W.3d at 443. Ordinarily, the party seeking withdrawal of the admissions has the burden of proof. *See In re Sewell*, 472 S.W.3d 449, 455 (Tex. App.—Texarkana 2015, orig. proceeding), *disapproved on other grounds by In re Bayview Loan Servicing, LLC*, 532 S.W.3d 510, 512 n.3 (Tex. App.—Texarkana 2017, orig. proceeding); *Boulet v. State*, 189 S.W.3d 833, 836 (Tex. App.—Houston [1st Dist.] 2006, no pet.). But when the deemed admissions are merits-preclusive, a different standard applies. *Sewell*, 472 S.W.3d at 455.

When admission requests "are used as intended—addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents— deeming admissions by default is unlikely to compromise presentation of the merits." *Wheeler*, 157 S.W.3d at 443; *see Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (stating requests for admissions were intended to "eliminat[e] matters about which there is no real controversy" and were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense") (quoting *Sanders v. Harder*, 227 S.W.2d 206, 208 (Tex. 1950)). Admission requests are not intended to require a plaintiff or defendant to admit that it has no cause of action or defense. *Sanders*, 227 S.W.2d at 208. They are intended to simplify trials and "should be used as 'a tool, not a trapdoor.'" *Marino*, 355 S.W.3d at 632 (quoting *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008)).

"By denying a motion to withdraw merits-preclusive admissions, a trial court effectively enters a case-ending discovery sanction." *Sewell*, 472 S.W.3d at 455–

8

56 (citing *Marino*, 355 S.W.3d at 632). When that happens, deemed admissions implicate due-process concerns. *Marino*, 355 S.W.3d at 632; *see Wheeler*, 157 S.W.3d at 443. Thus, when a party moves to withdraw deemed merits-preclusive admissions, due process requires that *the party opposing the withdrawal* prove that the moving party's failure to answer the admissions resulted from flagrant bad faith or callous disregard of the rules. *Sewell*, 472 S.W.3d at 456; *see Marino*, 355 S.W.3d at 633–34; *Wheeler*, 157 S.W.3d at 443–44; *see also TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) ("Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.").

Moreover, basing a summary judgment on deemed admissions incorporates the need to show flagrant bad faith or callous disregard as an element of the movant's summary-judgment burden. *Marino*, 355 S.W.3d at 634; *Medina v. Raven*, 492 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("This showing of flagrant bad faith or callous disregard is 'an element of the movant's summary judgment burden.'") (quoting *Yacoub v. SureTec Ins. Co.*, No. 14-13-00274-CV, 2015 WL 1928618, at *3 (Tex. App.—Houston [14th Dist.] Apr. 28, 2015, no pet.) (mem. op.)). Without bad faith or callous disregard of the rules by the party seeking to withdraw the merits-preclusive deemed admissions, good cause exists to permit their withdrawal. *Sewell*, 472 S.W.3d at 456 (citing *Marino*, 355 S.W.3d at 634).

## III.
## Analysis

STI raises two issues on appeal: (1) the trial court abused its discretion by denying STI's motion to withdraw the deemed admissions; and (2) the trial court erred by granting summary judgment against STI based on those deemed admissions.

## A. The deemed admissions are merits-preclusive.

As noted, STI sued Rise, GCRE, and LCAR for their alleged failure to pay for labor, materials, and equipment STI furnished under the subcontract. STI alleged claims for breach of contract, quantum meruit, and violations of the Texas Prompt Pay Act,[1] the Texas Construction Trust Fund Act,[2] and the fund-trapping statute.[3] STI also sued to foreclose on the mechanic's and materialmen's liens it had filed against the property.[4]

In their admission requests, Rise, GCRE, and LCAR asked STI to admit:

- That on August 11, 2015, STI entered into a contract with Rise in which STI agreed to furnish all labor, materials, equipment, licenses, taxes, permits, insurance, and supervision "for the installation complete and in place for the concrete paving per the plans, specifications, and qualifications" for the project;

- That STI did not fully perform all its contractual obligations;

---

[1] *See generally* Tex. Prop. Code Ann. §§ 28.001–.010 (West 2014).

[2] *See generally id.* §§ 162.001–.033 (West 2014)

[3] *See generally id.* §§ 53.081–.085 (West 2014).

[4] *See generally id.* §§ 53.151–.162 (West 2014).

- That STI did not substantially perform all its contractual obligations;

- That STI did not timely perform all its contractual obligations;

- That STI had not performed all conditions precedent—or all conditions precedent had not occurred—necessary for STI to sue on the contract;

- That STI's nonperformance was a breach of the contract;

- That STI was required to send notices to Rise, GCRE, and LCAR before filing liens on the project;

- That STI failed to comply with those lien-notice requirements;

- That STI's liens are invalid;

- That the amount STI is claiming in the lawsuit is invalid and is not due and owing to STI;

- That STI supplied defective concrete and performed defective work on the project; and

- That STI did not correct its defective work on the project.

In addition to these requests, Rise separately asked STI to admit that Rise is not indebted to STI for the work STI performed and for the materials it furnished on the project. GCRE and LCAR additionally asked STI to admit that STI does not have a contract with them, that STI wrongfully filed liens on their property, and that they are not indebted to STI for the work it performed and for the materials it furnished on the project.

STI's deemed admissions conclusively established the ultimate legal and factual issues in this case. Because Rise, GCRE, and LCAR moved for summary judgment based solely on the deemed admissions, the trial court's summary judgment against

11

STI was based only on those admissions and so they had a merits-preclusive effect. *See Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 666 (Tex. App.—San Antonio 2014, pet. denied) (holding that requests for admissions had merits-preclusive effect when it was "clear that the trial court's decision to render judgment in favor of Gonzalez was based solely on the deemed admissions conclusively establishing the ultimate legal issues in the case"); *cf. Marino*, 355 S.W.3d at 632 ("King's requests here, however, asked essentially that Marino admit to the validity of his claims and concede her defenses—matters King knew to be in dispute. Requests for admission were never intended for this purpose."). The deemed admissions here therefore implicate due-process concerns, and we thus turn to whether Rise, GCRE, and LCAR proved that STI acted with flagrant bad faith or callous disregard. *See Marino*, 355 S.W.3d at 632–33; *Wheeler*, 157 S.W.3d at 443–44.

## B. Rise, GCRE, and LCAR did not prove that STI's failure to answer the admission requests was the result of flagrant bad faith or callous disregard for the rules.

As the parties moving for summary judgment based on merits-preclusive deemed admissions, Rise, GCRE, and LCAR bore the burden of demonstrating that by not timely responding to the admission requests, STI acted with flagrant bad faith or with callous disregard. *See Marino*, 355 S.W.3d at 634; *Medina*, 492 S.W.3d at 62.

Here, it is undisputed that STI missed its deadline. *See* Tex. R. Civ. P. 198.2(a) (stating responding party must serve responses within 30 days after service of requests). Indeed, STI's responses to GCRE and LCAR's requests were almost two

12

months late, and its responses to Rise's requests were two-and-a-half months overdue. *See id.*

Rise, GCRE, and LCAR argue that both STI and Tagtmeier acted with flagrant bad faith and with callous disregard for the rules in the following ways. They point out that after intervening in the suit in November 2016, STI and Tagtmeier did nothing to pursue STI's claims and did not participate in the lawsuit until a year later when Abreo and Diamond filed an appearance and sought to set aside the deemed admissions. Rise, GCRE, and LCAR also complain that STI allowed Tagtmeier to continue representing it in this case despite knowing for months that Tagtmeier was not communicating with it or with opposing counsel. But the thrusts of Rise's and GCRE and LCAR's complaints are directed at Tagtmeier. While they are purportedly sympathetic to his physical and mental-health issues in the year leading up to his failure to answer the admission requests for STI, they maintain that neither his illness nor Hurricane Harvey rendered him incapacitated or unable to work.

To be clear, STI's and Tagtmeier's behavior in this lawsuit was not the model of diligence. After intervening, it appears that STI did nothing to advance its claims aside from participating in the mediation in December 2016. And as early as May 2017, STI knew that Tagtmeier had stopped communicating with it and with opposing counsel but failed to have its new attorneys appear in the case at that time. But "[b]ad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for dishonest, discriminatory[,] or malicious purpose." *Swanson v. State*,

13

No. 03-16-00729-CV, 2017 WL 1832492, at *3 (Tex. App.—Austin May 2, 2017, no pet.) (mem. op.) (quoting *Armstrong v. Collin Cty. Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.)). More to the point, "a lack of care, simple bad judgment, or a mistaken belief that no discovery had been served does not rise to the level of bad faith or callous disregard for the rules." *In re TT-Fountains of Tomball, Ltd.*, No. 01-15-00817-CV, 2016 WL 3965117, at *11 (Tex. App.—Houston [1st Dist.] July 21, 2016, orig. proceeding) (mem. op.). "Rather, a determination of bad faith or callous disregard for the rules has been reserved for cases in which the evidence shows that a party is mindful of pending deadlines and nonetheless either consciously or flagrantly fails to comply with the rules." *Id.* at *12.

Here, despite having been served with the admission requests, Tagtmeier did not recall having received them, and STI did not know about them. During the relevant period—August and September 2017, when the admissions were served and the responses were due—Tagtmeier's deteriorating mental health was exacerbated by Hurricane Harvey's hitting Houston.[5] Even though Tagtmeier was able to serve as an

---

[5]Hurricane Harvey's impact on south and southeast Texas was so widespread and devasting (Governor Greg Abbott declared a state of disaster in over 50 counties, including Harris County) that the Texas Supreme Court entered emergency orders recommending that all Texas courts "should consider disaster-caused delays as good cause for modifying or suspending all deadlines and procedures—whether prescribed by statute, rule, or order—in any case, civil or criminal" and suspending applicable statutes of limitations "for any civil claim if the claimant shows that the disastrous conditions resulting from Hurricane Harvey prevented the timely filing of the claim despite the party's and counsel's diligent efforts." Supreme Court of Tex., Emergency Order on Statutes of Limitations in Civil Cases, Misc. Docket No. 17-9098 (Aug. 29,

14

arbitrator during this period, he was having suicidal thoughts that rapidly escalated to suicide planning and hospitalization the following month.

Under these circumstances, we conclude that Rise, GCRE, and LCAR failed to prove that STI acted with flagrant bad faith or callous disregard for the rules. When a trial court imposes discovery sanctions that preclude a case's being presented on its merits, *TransAmerican* requires the court to determine whether the sanctions should be imposed on the party, the attorney, or both. 811 S.W.2d at 918–19. Here, the record does not support imposing merits-preclusive sanctions against STI for Tagtmeier's mental-health issues. And there is nothing in the record to justify a presumption that STI's claims lack merit. *See Marino*, 355 S.W.3d at 634; *Wheeler*, 157 S.W.3d at 443–44; *see also TransAmerican*, 811 S.W.2d at 918 ("Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit."). Accordingly, we find good cause to withdraw the deemed admissions. *See Marino*, 355 S.W.3d at 634.

---

2017); Supreme Court of Tex., Emergency Order Authorizing Modification and Suspension of Court Procedures in Proceedings Affected by Disaster, Misc. Docket No. 17-9091 (Aug. 28, 2017). Although STI did not take advantage of the supreme court's August 28, 2017 emergency order when seeking to set aside the deemed admissions, these emergency orders illuminate the storm's impact on Texas.

We must next consider whether the withdrawal of the deemed admissions would have unduly prejudiced Rise, GCRE, and LCAR and whether withdrawal will promote presentation of the merits. *See* Tex. R. Civ. P. 198.3(b).

## C. Withdrawal of the deemed admissions will not unduly prejudice Rise, GCRE, and LCAR, and withdrawal will further the presentation of the case's merits.

To permit withdrawal, the record must show that withdrawing the admissions will not unduly prejudice the opposing party and that withdrawal will further the presentation of the case's merits.[6] *See id.*; *Marino*, 355 S.W.3d at 634; *Wheeler*, 157 S.W.3d at 443–44. GCRE and LCAR argue that withdrawal would have unduly prejudiced them because "any delay in resolution of the case posed hardship due to the existing encumbrance of STI's . . . liens on their property" and "would reward STI—and punish GCRE and LCAR—with continued encumbrance of [their] property."[7] But, as noted, undue prejudice depends on whether withdrawing an admission will delay trial or significantly hamper the opposing party's ability to prepare for it. *Wheeler*, 157 S.W.3d at 443. Here, as STI points out, there was no

---

[6]It is unclear from the two leading supreme court cases on withdrawal of merits-preclusive requests for admissions—*Marino* and *Wheeler*—whether the moving or the nonmoving party has the burden under 198.3(b). *See Marino*, 355 S.W.3d at 634; *Wheeler*, 157 S.W.3d at 443–44. Regardless of who bears the burden, the record shows that withdrawing the admissions will promote presentation of the case's merits and would not unduly prejudice Rise, GCRE, and LCAR. *See Sewell*, 472 S.W.3d at 456 n.3.

[7]On appeal, Rise does not argue undue prejudice or whether withdrawal will further presentation of the merits.

16

scheduling order in place or trial date set. Thus, withdrawing the deemed admissions would not have delayed the trial or hampered Rise's or GCRE and LCAR's ability to prepare for trial. And "[t]he mere fact that a trial on the merits is necessary does not constitute undue prejudice." *Boulet*, 189 S.W.3d at 837–38 (quoting *City of Houston v. Riner*, 896 S.W.2d 317, 320 (Tex. App.—Houston [1st Dist.] 1995, writ denied)).

In addition to no undue prejudice, rule 198.3 requires that "presentation of the merits [must] be subserved" by permitting withdrawal. Tex. R. Civ. P. 198.3(b). "The two are different sides of the same coin, as presentation of the merits will suffer (1) if the requesting party *cannot* prepare for trial, and also (2) if the requestor *can* prepare but the case is decided on deemed (but perhaps untrue) facts anyway." *Wheeler*, 157 S.W.3d at 443 n.2. Because this case was decided on deemed admissions, the merits were not litigated, and thus withdrawing the admissions will allow the merits to be presented. *See Time Warner*, 441 S.W.3d at 669 ("[T]he merits of this case were never truly litigated because the case was decided on deemed admissions. There is no question that presentation of the merits would have been served by the trial court's withdrawal of the deemed admissions."); *see also Marino*, 355 S.W.3d at 634 ("Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults.").

**D. The trial court erred by denying STI's motion to withdraw the deemed admissions and by granting summary judgment against STI.**

Having determined that Rise, GCRE, and LCAR failed to carry their burden to prove that STI's failure to respond to the admission requests resulted from flagrant bad faith or callous disregard and that withdrawal will further presentation of the merits and will not unduly prejudice Rise, GCRE, and LCAR, we conclude that the trial court abused its discretion by denying STI's motion to withdraw the deemed admissions and erred by rendering summary judgment against STI based on those admissions. *See Marino*, 355 S.W.3d at 634; *Swanson*, 2017 WL 1832492, at *4. We therefore sustain STI's two issues.

**IV.**
**Conclusion**

Having sustained both of STI's issues, we reverse the trial court's order denying STI's amended motion to withdraw the deemed admissions, reverse the trial court's judgment, and remand the case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: December 31, 2018

18