ACCEPTED
12-14-00123-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
12/30/2015 12:34:21 PM
Pam Estes
CLERK

No. 12-14-00123-CV

In the

Twelfth Court of Appeals

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

12/30/2015 12:34:21 PM

PAM ESTES
Clerk

Liberty Mutual Insurance Company,

*Appellant,*

v.

Rickie Sims,

*Appellee.*

**APPELLEE RICKIE SIMS'S MOTION FOR REHEARING**

Don Wheeler
State Bar No: 21256200
**LAW OFFICE OF DON WHEELER**
101 Tenaha Street
Center, Texas  75935
Telephone No.:  (936) 598-2925
Facsimile No.:  (936) 598-7024
velawson@sbcglobal.net

Darrin Walker
State Bar. No. 00788600
**LAW OFFICE OF DARRIN WALKER**
6134 Riverchase Glen Dr.
Kingwood, Texas 77345
Telephone No.:  (281) 358-2295
Facsimile No.:  (281) 358-5602
darrinwalker@suddenlink.net

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

POINTS RELIED ON FOR REHEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      THE ALLEGED ENDORSEMENT WAS NEVER ADMITTED INTO EVIDENCE, BECAUSE LIBERTY OFFERED NO ADMISSIBLE EVIDENCE THAT IT WAS EFFECTUATED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.      Judge Mitchell received Court Exhibit 1 only as an offer of proof.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.      Liberty didn't ask Judge Mitchell to rule that the policy limit was $250,000 as a matter of law. . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     LIBERTY WAS BOUND BY ITS ADMISSION THAT THE POLICY LIMIT WAS $1 MILLION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.      Rule 193.5(a)(2) didn't excuse Liberty from the conclusive effect of its admission.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.      Liberty's admission that the policy limit was $1 million was not an admission of a pure question of law.. . . . . . . . . . . . . . . . . . 10

      C.      The disputed issue of whether the policy was modified to reduce the policy limit was for the jury, not the court.. . . . . . . . . . . 12

            1.      A fact issue existed regarding whether the policy was modified to reduce the policy limit to $250,000.. . . . . . . . . . . . . 12

2.    This Court improperly held that Liberty conclusively established that the policy was modified, despite Liberty's introducing no admissible evidence that it was.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      *a.    Court Exhibit 1 was not admitted for any purpose, but was merely included in the record for appellate purposes.. . . . . . . . . . . . . . . . . . . . . . . . 13*

      *b.    The documents attached to Liberty's post-verdict motion were never offered or admitted for any purpose, and were inadmissible hearsay anyway.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14*

      *c.    Liberty couldn't wait until after the verdict to present evidence on the disputed issue of whether the policy was modified... . . . . . . . . . . . . . . . . 15*

III.    JUDGE MITCHELL PROPERLY ADMITTED EVIDENCE OF THE POLICY LIMIT BECAUSE IT WAS A DISPUTED FACT ISSUE.. . . . . . . . . . . . . . . . . . . . . . . 17

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE WITH TEXAS RULE OF APPELLATE PROCEDURE 9.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

*CASES:*

*Basic Energy Serv., Inc. v. D-S-B Properties, Inc.*,
367 S.W.3d 254 (Tex. App.—Tyler 2011,
no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Estate of Nelson v. Neal*, 764 S.W.2d 322 (Tex. App.—
Texarkana 1988), *aff'd*, 787 S.W.2d 343
(Tex. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hanh H. Duong v. Bank One, N.A.*, 169 S.W.3d 246
(Tex. App.—Fort Worth 2005, no pet.). . . . . . . . . . . . . . . . . . . . . . . 11-12

*Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227
(Tex. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 16

*In re Sewell*, 472 S.W.3d 449 (Tex. App.—
Texarkana 2015, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Maswoswe v. Nelson*, 327 S.W.3d 889 (Tex. App.—
Beaumont 2010, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Medina v. Salinas*, 736 S.W.2d 224 (Tex. App.—
Corpus Christi 1987, writ denied).. . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mid-Century Ins. Co. of Texas v. McLain*,
No. 11-08-00097-CV, 2010 WL 851407
(Tex. App.—Eastland March 11, 2010, no pet.)
(mem. op.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Praytor v. Ford Motor Co.*, 97 S.W.3d 237 (Tex. App.—
Houston 2002, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Richmond Condos. v. Skipworth Commercial Plumbing,
Inc.*, 245 S.W.3d 646 (Tex. App.—Fort Worth
2008, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Salinas v. Rafati*, 948 S.W.2d 286 (Tex. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tex. Workers' Comp. Comm'n v. Garcia*,
    893 S.W.2d 504 (Tex. 1995) ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States Fid. and Guar. Co. v. Goudeau*, 272 S.W.3d 603
    (Tex. 2008) ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes and Rules:**

Tex. Const. art. I, § 15 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tex. Gov't Code Ann. § 311.026 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. R. Civ. P. 166a ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex. R. Civ. P. 193.2 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. R. Civ. P. 193.5 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

Tex. R. Civ. P. 198.1 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Tex. R. Civ. P. 198.3 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

Tex. R. Civ. P. 268 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex. R. Civ. P. 270 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

Tex. R. Civ. P. 301 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

**Other Authorities:**

Robert K. Wise & Katherine Hendler Fayne, *A Guide to*
*Properly Using and Responding to Requests for*
*Admission Under the Texas Discovery Rules*,
45 St. Mary's L.J. 655 (2014)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TO THE HONORABLE COURT OF APPEALS:

Undisputedly, the insurance policy originally had a $1 million policy limit. [6 CR 950; 8 CR 1415-1418, 1430] But Liberty claimed the policy had been modified to reduce the limit to $250,000. Modification was a question of fact on which Liberty bore the burden of proof. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). Sims offered — and Judge Mitchell admitted — evidence that the policy limit was $1 million. [3 RR 55-62; PX-13] Liberty offered no admissible evidence (either at or after trial) to authenticate the alleged endorsement or establish that the policy had been modified. Nevertheless, this Court held that Judge Mitchell erred by not ruling as a matter of law that the policy was modified to reduce the limit to $250,000. Essentially, this Court decided the disputed fact issue of modification in Liberty's favor on appeal, though Liberty never offered any admissible evidence to prove modification in the trial court. This was a miscarriage of justice.

## POINTS RELIED ON FOR REHEARING

1.  Court Exhibit 1 was never admitted for any purpose, and Liberty never offered any admissible evidence that the policy was modified to reduce the policy limit. Judge Mitchell did not err by failing to hold that the policy limit was $250,000 as a matter of law.

2.  Liberty was bound by its admission that the policy limit was $1

1

million, because that was a mixed question of law and fact and Liberty never properly amended its admission.

3. Judge Mitchell properly admitted evidence of the policy limit, because the policy limit was disputed and whether the policy was modified to reduce the policy limit was a question of fact for the jury.

## ARGUMENT

I. **THE ALLEGED ENDORSEMENT WAS NEVER ADMITTED INTO EVIDENCE, BECAUSE LIBERTY OFFERED NO ADMISSIBLE EVIDENCE THAT IT WAS EFFECTUATED.**

The Court's Opinion stated:

Before jury selection, Liberty submitted its supplemental discovery responses and the Chesapeake policy with the amendatory endorsement and UIM schedule to the court. Based on these documents, Liberty requested the trial court to rule, as a matter of law, that the UIM limits under Chesapeake's policy were $250,000.00. The trial court declined to rule on Liberty's request to determine the Chesapeake policy's UIM limits as a matter of law, and the case proceeded to jury selection. *Op. at 2.*

That isn't what happened.

### A. Judge Mitchell received Court Exhibit 1 only as an offer of proof.

All Liberty did prior to voir dire was submit Court Exhibit 1[1] as an offer of

---

[1] The alleged policy contained in Court Exhibit 1 was not "certified." [CX-1] The "certified" copy of the alleged policy was ***never*** offered into evidence, but was simply attached to Liberty's post-verdict motion. [7 CR 1059—8 CR 1381] Further, the "certified" copy of the alleged policy was ***different*** from the copy contained in Court Exhibit 1, and ***both*** of those were different from the copy Liberty originally produced. [CX-1, PX-13, 7 CR 1059—8 CR 1381]

proof, and Judge Mitchell received it merely for purposes of including it in the

record.  Here's what happened:

> MR. KOEN: . . . Now, the first thing we wanted to do was admit some records for the Court's record.  These will not be admitted into evidence . . ..  And we want those to be admitted as part of the Court record, not to be admitted into evidence of this case. . . .
>
> MR. WHEELER:  Your Honor, with that understanding, we have no problem as long as they're just being given to the Court, and they're not admitted into evidence into this case.
>
> .   .   .
>
> MR KOEN:  We would ask those be made part of the Court record.
>
> THE COURT:  Granted.  [2 RR 23-24]
>
> It is therefore clear that:

- Liberty tendered and Judge Mitchell received Court Exhibit 1 merely so it would be contained in the appellate record;

- Sims objected to it being "admitted into evidence in this case";

- Judge Mitchell merely granted Liberty's request that it "be made part of the Court record";

- Judge Mitchell did not admit it for any purpose;

- Sims did not agree that the alleged policy and amendments in Court Exhibit 1 were authentic or that the court or jury could

---

Additionally, the "certification" Liberty first provided after the trial was not sworn or made under penalty of perjury or made on personal knowledge.  It also "certified" that the attached policy was "the original policy issued," when it contained the alleged endorsement made after the policy was issued.  [7 CR 1059; 8 CR 1328]

consider them for any purpose;

- Judge Mitchell did not rule that the alleged policy Liberty submitted was authentic or accurately reflected the terms of the policy; and

- Judge Mitchell did not rule that the alleged endorsement had been properly effectuated.

The foregoing was confirmed just before Sims rested, when the following

occurred outside the jury's presence:

> MS. VULPITTA: *I'm not sure how properly this was done before*, and I understand that our endorsement, the policy amendment, is not going before the jury, but we would at this time like to make a formal offer of proof, *if that wasn't clear before*.
> .   .   .
> THE COURT: I think it's been — well, okay. Go ahead.
>
> MS. VULPITTA: Just purely for record purposes.
> .   .   .
> MR. WALKER: *As far as we're concerned, you made an offer of proof*, but be our guest.
>
> MS. VULPITTA: [Whereupon Liberty's counsel read from the alleged endorsement and Liberty's discovery responses] . . . Your Honor, again, those were just read for record purposes . . .
>
> MR. KOEN: . . . We would offer those into evidence. We're assuming that the Plaintiffs object?
>
> MR. WALKER: We object.
> .   .   .
>
> THE COURT: Well, I understand the Plaintiffs took issue that it was in fact an amendatory policy.

MR. WALKER:  Right.  There's no evidence.

THE COURT:  I mean, it's — *I haven't found it's an amendatory policy.  You stated that.*

MR. KOEN:  And so we're offering it into your evidence, and we just need to get —

THE COURT:  *That's your contention.  That's not a fact in the case.*

MS. VULPITTA:  Right.

THE COURT:  *That has not been established that it's an amendatory policy*.

.    .    .

THE COURT:  I'm just saying *I'm not taking your assertion that it's an amendatory policy as a statement of fact.  That's an issue, and that's what's at issue here is whether or not it's an amendatory policy.*

MR. WALKER:  Right.

MR. KOEN:  And just for record purposes, we'll probably need to get a ruling from the Court, I guess, sustaining the Plaintiff's objection to our offer of proof.

THE COURT:  Yes.

MR. KOEN:  Okay.  You are sustaining the Plaintiff's objection?

THE COURT:  Yes.  [4 RR 132-137]

5

**B.      Liberty didn't ask Judge Mitchell to rule that the policy limit was $250,000 as a matter of law.**

Prior to voir dire, Liberty didn't ask Judge Mitchell to rule as a matter of law that the policy limit was $250,000, and Judge Mitchell didn't decline to rule on any such request.  Liberty simply objected to the trial proceeding because it had offered to pay Sims $250,000, which it claimed was the policy limit.  [2 RR 26] Sims responded that he contended the policy limit was $1 million, and the conversation shifted to Sims's motion for leave to amend his petition.  [2 RR 26-27]  Liberty did not reurge its objection to the trial proceeding or press Judge Mitchell for a ruling on it prior to beginning jury selection.  [2 RR 26-32]  Judge Mitchell did not "decline to rule" on even the objection Liberty did make (that the trial should not proceed), much less on any request to rule as a matter of law that the policy limit was $250,000 (which Liberty didn't even make).

The foregoing is manifest from the following statement Liberty's counsel made just before opening statements:

> . . . [T]here's an issue as to the amount of policy limits.  Liberty contends it's $250,000; Plaintiffs contend it's $1 million.  ***That is not part of this lawsuit.  They have filed a separate claim which the Court severed, which is now in federal court, dealing with all the extra contractual issues.  It is in that lawsuit that the issue of policy limits will be decided.***  [3 RR 7-8]

Thus, not only did Liberty not ask Judge Mitchell to rule on the policy limit as a

matter of law, Liberty asked him ***not*** to.

Furthermore, Liberty had filed no motion for summary judgment, Tex. R. Civ. P. 166a, for directed verdict, Tex. R. Civ. P. 268, or for JNOV, Tex. R. Civ. P. 301). So Judge Mitchell couldn't have ruled as a matter of law at that time.

This Court's erroneous assumption that Court Exhibit 1 was admitted for purposes of a request that Judge Mitchell rule on the policy limit as a matter of law was critical. Liberty produced the "certified" version of the alleged policy only after the verdict, in violation of Texas Rule of Civil Procedure 270. Yet this Court excused this failure, erroneously stating, "the Amendatory Endorsement 2610A was accepted by the trial court as Court Exhibit No. 1 prior to jury selection." *Op. at 10.* Further, this Court excused Liberty's failure to prove that the policy had been modified, saying, "Liberty obtained the admission of the policy, including the relevant endorsements and schedules, at a pretrial hearing as part of the record for the court's consideration." *Op. at 11*. So, even though Judge Mitchell sustained Sims's objections to the alleged endorsement and excluded it from evidence [4 RR 71-75], and even though Judge Mitchell received the endorsement only so it would be included in the record [2 RR 23-24; 4 RR 136-137], this Court held that it was not only evidence upon which the judgment should have been based, but ***conclusive*** evidence that the policy was modified. This holding was

7

extraordinary, and erroneous.

## II. LIBERTY WAS BOUND BY ITS ADMISSION THAT THE POLICY LIMIT WAS $1 MILLION.

This Court held that Liberty was not bound by its admission that the policy limit was $1 million because:

> (i) Liberty amended other discovery responses to assert that the policy limit was $250,000, so under Texas Rule of Civil Procedure 193.5(a)(2), Liberty had no obligation to obtain the trial court's leave to amend its admission that the policy limit was $1 million;

> (ii) a request for admission is ineffective for resolving pure questions of law; and

> (iii) despite the admission and Liberty's "mistakes" regarding the policy, the trial court must still make a legal determination of the policy's terms and UIM limits.

*Op. at 7-9.* These holdings undermine the purpose and procedure of Rule 198 and the Texas Constitution's guarantee of a jury trial on disputed fact issues.

### A. Rule 193.5(a)(2) didn't excuse Liberty from the conclusive effect of its admission.

Rule 198.3 states:

> . . . A matter admitted under this rule is conclusively established . . . unless the court permits the party to withdraw or amend the admission. The court may permit the party to withdraw or amend the admission if:

>> (a)    the party shows good cause for the withdrawal or amendment; and

(b)    the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by permitting the party to amend or withdraw the admission.

Liberty neither sought nor received Judge Mitchell's permission to amend its admission that the policy limit was $1 million.  Yet this Court held that Liberty was not bound by its admission because Liberty amended *other* discovery responses to disclose its contention that the policy limit was $250,000.  *Op. at 8.* Rule 193.5(a)(2) states that a party need not formally amend a discovery response if "the additional or corrective information has been made known to the other parties in writing . . . or through other discovery responses."  But Rule 193.5(a)(2) does not trump Rule 198.3, and this Court's application of Rule 193.5(a)(2) in this case renders Rule 198.3 nugatory *in every case*.  Under this Court's analysis, *any* litigant could avoid the conclusive effect of an admission by writing the other party a letter saying, "We deny the fact we previously admitted."  According to this Court's analysis, that the party now denied the previously admitted fact would have "been made known to the other part[y] in writing," there would be no need to amend the response to the request for admission, and the party would be relieved of the conclusive effect of its admission, without ever asking for the trial court's

9

leave to amend its response or demonstrating good cause for doing so. So why even have Rule 198.3?

To the extent Rules 193.5(a)(2) and 198.3 conflict, the more specific provisions in Rule 198 regarding the effect of admissions and the procedure for amending them control over Rule 193.5's general rules regarding supplementing written discovery. Tex. Gov't Code Ann. § 311.026(b); Robert K. Wise & Katherine Hendler Fayne, *A Guide to Properly Using and Responding to Requests for Admission Under the Texas Discovery Rules*, 45 St. Mary's L.J. 655, 726 (2014). Yet the two rules are easily harmonized. For even if Rule 193.5(a)(2) eliminates a party's duty to amend a response to a request for admission, Rule 198.3 still mandates that the admission is conclusive unless the trial court permits the party to amend it based on good cause. *See Wise*, *supra* at 726. This Court's holding that Rule 193.5(a)(2) renders Rule 198.3 ineffective was erroneous.

### B. Liberty's admission that the policy limit was $1 million was not an admission of a pure question of law.

The purpose of requests for admission is to simplify trials by eliminating matters about which there is no controversy, but which may be difficult or expensive to prove. *In re Sewell*, 472 S.W.3d 449, 458 (Tex. App.—Texarkana 2015, no pet.). A request for admission may request that "the other party admit the

truth of any matter within the scope of discovery, including statements of opinion or of fact *or of the application of law to fact* . . ..” Tex. R. Civ. P. 198.1 (emphasis added). However, it may not request that the other party admit a *pure* question of law. *Maswoswe v. Nelson*, 327 S.W.3d 889, 897 (Tex. App.— Beaumont 2010, no pet.).

An insurance policy’s UIM policy limit is exactly the type of matter that should be — and usually is — resolved by requests for admission, because it is rarely disputed. In this case, Liberty answered the request for admission *without objection* [6 CR 950], thereby waiving any complaint that it was improper. Tex. R. Civ. P. 193.2(a), (e). But this Court held that the policy limit is a pure question of law that cannot be established in a request for admission. *Op. at 8-9.* So *even if the insurer admits such a request without objection,* it is not bound by the admission.[2] Accordingly, litigants will be forced to litigate the policy limit in every UIM case.

The UIM policy limit is a mixed question of law and fact, not a pure question of law, because it involves the application of the law to the facts and circumstances of the case. *See Hanh H. Duong v. Bank One, N.A.*, 169 S.W.3d

---

[2] This holding will also prohibit parties from stipulating to the policy limit. *Basic Energy Serv., Inc. v. D-S-B Properties, Inc.*, 367 S.W.3d 254, 269-70 (Tex. App.—Tyler 2011, no pet.).

11

246, 251 (Tex. App.—Fort Worth 2005, no pet.). *Compare United States Fid. and Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008) (Green, J., dissenting) (UIM insurer is bound by admission that plaintiff is "insured" under the policy, even though plaintiff might not be insured under policy's terms). In this case, whether the policy limit was $1 million or $250,000 depended upon whether the policy was modified to reduce the policy limit. That was a question of fact, *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986), so the request did not ask Liberty to admit a pure question of law.

**C.      The disputed issue of whether the policy was modified to reduce the policy limit was for the jury, not the court.**

This Court held that the UIM policy limit was a matter for the court to decide, so Liberty could wait until after the verdict to offer evidence that the policy had been modified to reduce the policy limit. *Op. at 10.* But when a fact issue exists, the jury must resolve the fact issue. Tex. Const. art. I, § 15; *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 526 (Tex. 1995). So the parties must present their evidence on that disputed fact issue to the jury.

**1.      A fact issue existed regarding whether the policy was modified to reduce the policy limit to $250,000.**

This Court held that Liberty was not bound by its admission because an admission cannot "change the trial court's obligation to review and make a legal

12

determination of the policy's terms and UIM limits." *Op. at 9*. ***But this begs the question of what constitutes "the policy."*** It was undisputed that the policy limit was originally $1 million. Yet this Court's Opinion simply assumed that "the policy" included the alleged endorsement reducing the policy limit to $250,000, even though Liberty never offered any admissible evidence to prove that the modification ever occurred — a fact issue on which Liberty bore the burden of proof. *Hathaway*, 711 S.W.2d at 228.

> **2. This Court improperly held that Liberty conclusively established that the policy was modified, despite Liberty's introducing no admissible evidence that it was.**

This Court's Opinion circumvented Liberty's failure to offer any admissible evidence of modification by holding that (i) the alleged endorsement was admitted as Court Exhibit 1, *Op. at 10 & 11*, (ii) the record does not reflect that Judge Mitchell expressly sustained Sims's hearsay objection to the documents attached to Liberty's post-verdict motion, and (iii) Liberty could present evidence on this disputed fact issue after the verdict. *Op. at 10.*

> ***a. Court Exhibit 1 was not admitted for any purpose, but was merely included in the record for appellate purposes.***

We have demonstrated that Court Exhibit 1 was not admitted for any purpose, but was merely included in the record for appellate purposes. This

13

Court's holding to the contrary was inconsistent with the record. So the reception of Court Exhibit 1 for record purposes could not establish that the policy was modified to reduce the policy limit, or even constitute some evidence that it was.

> **b.** **The documents attached to Liberty's post-verdict motion were never offered or admitted for any purpose, and were inadmissible hearsay anyway.**

It's true that the record doesn't reflect that Judge Mitchell expressly sustained Sims's hearsay objection to the documents attached to Liberty's post-verdict motion. But neither does the record reflect that Liberty even offered those documents into evidence or that the trial court admitted or even considered them. It was *Liberty's* burden as the appellant to present an appellate record demonstrating error. *Medina v. Salinas*, 736 S.W.2d 224, 225 (Tex. App.—Corpus Christi 1987, writ denied). As the prevailing appellee, Sims was not required to preserve error. *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 242 (Tex. App.—Houston 2002, no pet.).

Moreover, a party can attach anything it wants to a motion and file it with the clerk. That doesn't mean that such documents are admitted into evidence. *Estate of Nelson v. Neal*, 764 S.W.2d 322, 325 (Tex. App.—Texarkana 1988), *aff'd*, 787 S.W.2d 343 (Tex. 1990). The record in this case does not reflect that the documents attached to Liberty's post-verdict motion were even offered into

14

evidence, much less admitted.

Further, while an objecting party must obtain a ruling, the ruling can be implied. *Richmond Condos. v. Skipworth Commercial Plumbing, Inc.*, 245 S.W.3d 646, 665 (Tex. App.—Fort Worth 2008, pet. denied). Judge Mitchell signed Sims's proposed judgment [10 CR 1680-1683], impliedly overruling Liberty's post-verdict motion, which asked the court to disregard the jury findings and sign a judgment awarding Sims only $250,000. *Salinas v. Rafati*, 948 S.W.2d 286, 288 (Tex. 1997). Absent any indication that Judge Mitchell admitted the documents attached to Liberty's post-verdict motion, his overruling Liberty's motion impliedly sustained Sims's objections to the documents attached to Liberty's motion.

Finally, the judgment must conform to the case proved at trial, and the court can grant a motion to disregard jury findings only if the evidence ***admitted at trial*** was conclusive. Tex. R. Civ. P. 301. The court cannot disregard a jury finding that was supported by the evidence admitted at trial based on contrary evidence not admitted but attached to a post-verdict motion.

> c. ***Liberty couldn't wait until after the verdict to present evidence on the disputed issue of whether the policy was modified.***

Whether a contract has been modified is a question of fact for the jury, not a

question of law for the court.  *Hathaway*, 711 S.W.2d at 228.  Yet this Court held

Liberty could wait until after the jury returned its verdict and then simply attach

evidence of modification to its motion for JNOV.  *Op. at 10.*  As support for this

holding, the Court cited *Mid-Century Ins. Co. of Texas v. McLain*, No. 11-08-

00097-CV, 2010 WL 851407 (Tex. App.—Eastland March 11, 2010, no pet.)

(mem. op.).  But *McLain* did not hold that the insurer can wait until after the

verdict to produce evidence of a disputed modification of the policy.  It is true that

in *McLain*, the court permitted the insurer to introduce the policy after the verdict.

*Id*. at *1.  However, the plaintiff could not complain about that procedural

irregularity, because it benefitted the plaintiff.  Had the UIM policy not been

introduced, the plaintiff couldn't have recovered at all.  *Id.* at *11.  Further, the

policy limit was undisputed, for the plaintiff had judicially admitted prior to trial

that it was $20,000.[3]  *Id*. at *3.  So, the plaintiff suffered no harm from the

insurer's introducing the policy post-verdict.  But in the case at bar, Sims always

contended that the policy limit was $1 million, and introduced evidence to support

that contention at trial.  Liberty then had the burden to introduce evidence ***at trial***

of the alleged modification.  TEX. R. CIV. P. 270; *Hathaway*, 711 S.W.2d at 228.

---

[3] According to this Court's Opinion, however, such an admission would not
be binding.

It couldn't wait until after the verdict to do so.

Importantly, the policy limit was *not* undisputed in this case. To the contrary, it was undisputed that the policy originally provided $1 million in coverage, but Liberty claimed it was *modified* to reduce the limit to $250,000. That was a fact issue on which Liberty bore the burden of proof. And Sims was entitled to have the jury determine that fact issue. Yet Liberty *never* offered admissible evidence to prove the alleged modification (not even after the verdict). This Court's holding that, *despite Liberty's complete failure of proof*, Judge Mitchell should have ruled *as a matter of law* that the policy had been modified to reduce the policy limit is completely unfair, and deprives Sims of his right to have a jury decide the disputed issue of whether the policy was modified.

## III. JUDGE MITCHELL PROPERLY ADMITTED EVIDENCE OF THE POLICY LIMIT BECAUSE IT WAS A DISPUTED FACT ISSUE.

A UIM claim is a contract claim under the policy, so the plaintiff must prove he is entitled to benefits under the policy. That includes proving the *amount* of benefits to which he is entitled. *McLain*, 2010 WL 851407 at *1. Of course, *when there is no dispute about the policy limit*, the court should not admit evidence of it before the jury, because it is irrelevant to the issues the jury will determine. Indeed, Sims offered not to mention the policy limit if Liberty would

17

stipulate that it was $1 million, but Liberty refused.  [3 RR 10-11]

Sims therefore presented admissible evidence that the limit was $1 million. [3 RR 55-57, 60-62; PX-13]  Liberty offered no admissible evidence that it had been modified.  Yet Liberty never conceded that it had failed in its proof.  What was Judge Mitchell supposed to do?  Prohibit Sims from presenting evidence on this disputed fact issue?[4]

This Court's Opinion erroneously treated the policy-limit issue as undisputed, therefore concluding that evidence of the policy limit was inadmissible.  But the policy limit was a critical disputed fact issue the jury had to resolve.  Accordingly, Judge Mitchell properly admitted evidence of the policy limit.  It also would have been proper to admit ***admissible*** evidence that the policy had been modified to reduce the policy limit.  ***But Liberty never offered any.***

Furthermore, Liberty produced three ***different*** documents, each time saying the document produced was a true copy of the policy.  [8 CR 1418, 1421, 1430; 6 CR 904-905; 7 CR 1059—8 CR 1381]  Yet it never offered ***any*** sworn testimony

---

[4] Liberty could have filed a motion for summary judgment, if it thought it could prove modification as a matter of law.  Yet Liberty filed no such motion. Liberty also could have moved to bifurcate the modification issue from the other issues, so the jury would not have heard any evidence regarding the policy limit until after it had already decided the other issues.  Liberty also failed to pursue this option.

that *any* of these documents were actually the correct version of the policy. The so called "certified" copy was *never* offered or admitted into evidence, and was not even *produced* until after the trial. And the "certification" was not sworn, made under penalty of perjury, or based on personal knowledge. [7 CR 1059] This Court erred in holding that Liberty proved the alleged modification of the policy as a matter of law and that the trial court erred in admitting evidence of the policy limit.

Moreover, the evidence of the policy limit did not cause the jury to render an improper verdict. The jury didn't return an award of just over $1 million, as would be expected if it had been influenced by the $1 million policy limit. Instead, it unanimously found that Sims's damages exceeded $2.5 million. [6 CR 1008-1009, 1011] This award was supported by Sims's evidence, including his past medical [PX-1], a Functional Capacity Evaluation that demonstrated that he was disabled due to the accident [3 RR 137, 148-49], between $1.1 and $1.3 million in diminished earning capacity [4 RR 115-119; PX-7a], and a life-care plan indicating he will need $533,000 in future medical care [4 RR 43-44, 120-122; PX-4b; PX-7b]. And Liberty called *no* witnesses to controvert Sims's evidence of liability or damages. [4 RR 141] Accordingly, the admission of the policy did not cause an improper verdict.

19

**PRAYER**

Sims respectfully prays that the Court grant this motion, withdraw its opinion and judgment dated December 3, 2015, and issue a new opinion and judgment affirming the trial court's judgment.

Respectfully submitted,

Don Wheeler
State Bar No: 21256200
**LAW OFFICE OF DON WHEELER**
101 Tenaha Street
Center, Texas 75935
Telephone No.: (936) 598-2925
Facsimile No.: (936) 598-7024
velawson@sbcglobal.net

LAW OFFICE OF DARRIN WALKER
6134 Riverchase Glen Dr.
Kingwood, Texas 77345
(281) 358-2295 (telephone)
(281) 358-5602 (facsimile)
darrinwalker@suddenlink.net

By: /s/ Darrin Walker
      Darrin Walker
      State Bar. No. 00788600

*Counsel for Appellee*

20

## CERTIFICATE OF COMPLIANCE WITH TEXAS
## RULE OF APPELLATE PROCEDURE 9.4

I certify that this Response complies with the limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this Response contains 4,469 words, excluding the parts of the Response exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ Darrin Walker
Darrin Walker

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion for rehearing has been provided to counsel listed below in the manner indicated on this 30th day of December, 2015.

c.c.    Hon. David Plaut           via electronic service and
       Attorney for Appellant      via email to dplaut@hannaplaut.com

/s/ Darrin Walker
Darrin Walker